IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAURALIE H. BLADER,

    Plaintiff,           OPINION AND ORDER

  v.                    12-cv-854-wmc

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration,

    Defendant.

---

  Plaintiff Lauralie H. Blader seeks reversal of a decision made by the Commissioner of the Social Security Administration, which determined that she was ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d). Blader is *pro se* and she has been granted leave to proceed *in forma pauperis*. The Commissioner has filed an answer, along with the record of Blader's administrative proceeding. Both parties have submitted briefing. After considering all of the pleadings, the administrative record and the applicable law, the court will affirm the Commissioner's decision for reasons set forth below.

FACTS[1]

  Blader is a resident of Montello, Wisconsin, who was born on July 27, 1965. On March 30, 2009, Blader filed an application for social security disability insurance benefits and supplemental security income, alleging that she became disabled on January 1, 2004, because of fibromyalgia, chronic pain and bilateral carpal tunnel syndrome.

---

[1] The following facts are drawn from the administrative record (AR), available at dkt. #7.

After the state disability agency denied her application initially and upon reconsideration, Blader requested a hearing before an administrative law judge.

At a hearing before Administrative Law Judge Mary L. Everstine, Blader testified that she earned a high school diploma and had some college courses before becoming a full-time homemaker. Blader reported developing fibromyalgia after suffering from "toxic shock" in 1993.[2] After Blader and her husband divorced in 2001, Blader worked part-time providing in-home healthcare, which required a lot of lifting. Between 2004 and 2008, she worked part-time on a contract basis as an office assistant and cleaning person for a local builder. In 2006, she suffered a cervical strain in a car accident and had surgery (a hysterectomy) for endometriosis that same year.

Blader testified that her pain and weakness in both hands made it difficult to type or write for any period of time. She also testified that her generalized fatigue and chronic pain "everywhere" made it impossible to sit for longer than 20 minutes at time.[3] She further reported suffering from "flulike symptoms like 24/7," as well as pain in her neck and entire back. Blader attributed the fatigue and overall "sluggishness" to her pain medication, antidepressants and medication for anxiety.

In addition to Blader's testimony, the ALJ considered medical records indicating

---

[2] "Fibromyalgia" is characterized by "pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 703 (32nd ed. 2012).

[3] Chronic pain involves "more or less a localized sensation of discomfort, distress, or agony" that "persists over a long period of time." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 359, 1363.

that her fibromyalgia was under control with medication. In terms of possible physical causes of her symptoms, a 2007 MRI of plaintiff's spine showed only minimal degenerative changes. Similarly, an April 2009 EMG/Nerve Conduction Study was negative for any radiculopathy or neuropathy into the lower extremities and showed only mild bilateral carpal tunnel syndrome. While seen for depression and anxiety in 2009, the records indicate Blader failed to show for therapy on multiple occasions. During the sessions that plaintiff attended, the therapist's notes indicate she mostly discussed her somatic complaints, which were described as grandiose, leading to speculation that she had possible histrionic personality disorder.

The ALJ also considered reports from state agency medical consultants (Dr. A. Bhargava, Dr. Syd Foster and Dr. Oleynick), psychiatric consultants (Dr. Douglas Varvil-Weld, Dr. Kyla King) and the results of a consultative evaluation conducted by a psychologist (Dr. H. Unger). Finally, the ALJ considered medical records and reports from plaintiff's treating physicians (Dr. Thomas Chulski, Dr. Ekaterina Soforo).

Based on plaintiff's testimony and medical records, the ALJ posed two hypothetical questions to a vocational expert at the hearing. In response to those questions, the vocational expert opined that Blader was able to perform light or sedentary work then available in the regional and national economy.

## THE ALJ'S DECISION

On April 29, 2011, the ALJ found that Blader was "not disabled" within the

meaning of the Social Security Act. 42 U.S.C. § 423(d)(1)(A) (defining "disability" in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment").[4] In reaching this conclusion, the ALJ followed a five-step analysis established by the Social Security Administration. *See* 20 C.F.R. §§ 404.1520, 416.920.[5] *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

At step one, the ALJ found that Blader had not engaged in substantial gainful activity since January 1, 2004, the alleged onset date. At step two, the ALJ found that Blader had the following severe impairments: fibromyalgia and chronic pain syndrome. At step three, the ALJ found that Blader did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1.

---

[4] To be found disabled, a person must "not only [be] unable to do his previous work, but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" *Id.*

[5] Under these steps, the ALJ is required to consider in sequence: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant has the ability to perform his or her past relevant work; and (5) whether the claimant is capable of performing work in the national economy. The claimant bears the burden of proof in steps one through four. *See id.* Under the five-step sequential evaluation process, "[a]n affirmative answer leads either to the next step or, on [steps three] and [five], to a finding that the claimant is disabled. A negative answer at any point, other than [step three], ends the inquiry and leads to a determination that a claimant is not disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir. 1985) (citation omitted)). If the claimant satisfies his burden at step four, then the burden shifts to the Commissioner at step five to prove that the claimant is capable of performing work in the national economy. *See Knight*, 55 F.3d at 313.

After completing step three, the ALJ determined that Blader had the "residual functional capacity" to perform "light work as defined in 20 C.F.R. 404.1567(b)." Specifically, the ALJ found that Blader "can lift or carry 20 pounds occasionally and 10 pounds frequently; and can sit, stand, or walk at least 6 hours each in an 8-hour workday." The ALJ noted, however, that Blader was "precluded from climbing ladders, ropes, or scaffolds, working at unprotected heights, and concentrated exposure to vibrations or vibrating tools." While able to engage in "frequent balancing, stooping, and climbing of stairs or ramps," the ALJ found Blader further limited to "occasional kneeling, crouching, and crawling."

At step four, the ALJ found that Blader had no past relevant work because her history included only part-time employment that was not at the substantial gainful level. Given her residual functional capacity to perform light work subject to certain restrictions, and that Blader was a "younger individual" with at least a high school education, the ALJ concluded there were jobs in significant numbers in the national economy that Blader could perform. Therefore, the ALJ found Blader "not disabled" at step five of the analysis.

The ALJ's decision became final on October 25, 2002, when the Social Security Administration Appeals Council denied Blader's request for review of the ALJ's decision.[6]

---

[6] The Appeals Council's affirmance of the ALJ's decision constitutes the final decision of the Commissioner of Social Security. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

OPINION

In her petition for judicial review, Blader notes that she filed another application for disability benefits in April 2011, which was approved, but that she was denied benefits between April 2009 and April 2011. Blader maintains the Social Security Appeals Council erred in failing to reverse the ALJ's original denial of benefits. In particular, Blader claims that the ALJ unreasonably determined her residual functional capacity by finding her allegations not entirely credible and by discounting an opinion given by one of her treating physicians. Blader also contends that the ALJ failed to adequately assess her mental impairments or to consider medical evidence of other severe impairments that supported her claim.

A federal court reviews an ALJ's decision with deference and will uphold a denial of benefits unless it is unsupported by substantial evidence or based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the [C]ommissioner, or the [C]ommissioner's designate, the ALJ." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted). Thus, a reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v.*

*Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

At the same time, a federal court must conduct a "critical review of the evidence" before affirming a decision to deny benefits. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). While the ALJ need not mention every piece of evidence, *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008), he must adequately discuss the issues and must build "an accurate and logical bridge" between the evidence and his conclusion that the claimant is not disabled. *McKinzey*, 641 F.3d at 889 (citation omitted). The decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Because the ALJ's decision here meets these minimum requirements, the Commissioner's final decision denying benefits from April 2009 to April 2011 will be affirmed.

### I. The ALJ's Residual Functional Capacity Determination -- Credibility

The state medical consultant (Dr. A. Bhargava) assessed plaintiff's residual functional capacity and diagnosed minimal lumbar degeneration and mild left knee chondromalacia (softening cartilage). Notwithstanding this assessment, Dr. Bhargava opined that plaintiff could still lift or carry 20 pounds occasionally and 10 pounds frequently; could sit, stand or walk 6 hours in an 8-hour workday; could engage in frequent climbing of stairs or ramps, balancing and stooping; precluded from climbing ladders, ropes, or scaffolds and from concentrated exposure to vibrations; and limited to

occasional kneeling, crouching and crawling. The state psychiatric consultant (Dr. H. Unger) concluded that plaintiff had no severe mental impairment.

As a result of this assessment, the ALJ found that plaintiff was able to perform a wide range of light work as specified in the hypothetical posed to the vocational expert:

> . . . The expert was asked to assume an individual was the claimant's age and had the claimant's education and work history. The individual could lift or carry 20 pounds occasionally and 10 pounds frequently. The individual could not sit, stand, or walk longer than 6 hours in an 8-hour workday. The individual was precluded from climbing ladders, ropes, or scaffolds, working at unprotected heights, and concentrated exposure to vibrations or vibrating tools. The individual was limited to occasional kneeling, crouching, and crawling. The individual could engage in frequent balancing, stooping, and climbing of stairs or ramps. The expert testified the individual could work as a retail marker, which is light, unskilled work of which there are 8,288 such jobs in Wisconsin and 461,128 such jobs in the nation (DOT 209.587-034) and as a self-storage rental clerk, which is light, unskilled work of which there are 1,446 such jobs in Wisconsin and 80,534 such jobs in the nation (DOT 295.367-026). The testimony of the vocational expert was credible and consistent with the Dictionary of Occupational Titles.

AR 26-27.

The ALJ found this conclusion supported by the weight of the medical evidence and the functional capacity assessments of record. The ALJ found further that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms associated with fibromyalgia and chronic pain syndrome. The ALJ concluded, however, that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent that they [were] inconsistent with her residual functional capacity assessment."

8

Plaintiff contends that the ALJ erred in making this determination because there was insufficient reason to discount her subjective allegations about her impairments. Under Social Security Ruling 96-7p, an ALJ must follow a two-step process in evaluating an individual's own description of his or her impairments. The ALJ must: (1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and (2) if such a determination is made, then she must evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1 (1996); *see also Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).

An ALJ may not reject a claimant's testimony regarding her symptoms on the sole ground that her statements are not substantiated by objective medical evidence. *See Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007) (discussing SSR 96-7p). Instead, the ALJ must consider the entire case record to determine whether the claimant's statements are credible. *See Arnold*, 473 F.3d at 822 (citing 20 C.F.R. § 404.1529; SSR 96-7p). Relevant factors the ALJ must consider include: the claimant's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain;

9

the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions. *See* SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Scheck*, 357 F.3d at 703; *Zurawski*, 245 F.3d at 887.

Here, the ALJ found the following severe impairments: fibromyalgia and chronic pain syndrome. The ALJ noted, however, that Blader's fibromyalgia was controlled by medication. Other than mild degenerative changes in her spine and mild chondromalacia or softening of cartilage in her left knee, there was also nothing else of note from her test results.

In reaching the conclusion that plaintiff could perform light work, the ALJ gave reasons for finding plaintiff's testimony to be "generally credible, but not to the extent she alleged an inability to perform any work." First, the ALJ noted that plaintiff's allegation was not supported by the medical evidence. Second, in summarizing her testimony, the ALJ noted that Blader worked part-time, despite her stated inability to perform any work:

> . . . The claimant testified that her primary limitations related to diffuse pain and chronic fatigue caused by fibromyalgia, which was first diagnosed in 1993. She testified she has leg cramps, joint and muscle pain, and constant flu-like symptoms. She has pain, weakness, and swelling in her hands due to carpal tunnel syndrome. She alleged carpal tunnel symptoms worsened despite undergoing right carpal tunnel release [surgery]. She was involved in a 2006 motor vehicle that caused neck pain. She underwent a hysterectomy for endometriosis that she alleged left her unable to walk for seven months. She testified that exacerbations of fibromyalgia leave her bedridden for days. She routinely naps for an hour daily. She has taken Percocet for pain relief since July 2008. She takes Prozac for depression. She does low impact exercises and uses a TENS unit about 50% of the time for pain relief. Prior to taking pain medication, she had tried physical

10

> therapy because she alleged sensitivity to and side effects from medications. She testified that it takes a couple of hours to perform more than very light household chores. Despite her chronic pain, the claimant acknowledged that she worked part-time between 2004 and 2008. She did not work more than 20-25 hours per week. She worked as an office assistant and cleaner.

AR 26.

The ALJ noted further that plaintiff's testimony about her functional limitations appeared to be overstated in light of objective test results and her refusal to cooperate with treatment by attending physical or psychological therapy.

> Despite the claimant's testimony regarding her extreme functional limitations in 2006, the medical records do not indicate that she reported this level of limitation following either her May 2006 hysterectomy or her March 2006 motor vehicle accident. Her failure to report these limitations to her physicians undermined her credibility (Exhibit 1 F). Similarly, the therapy notes reflect inconsistent attendance and a grandiose presentation with a somatic focus (Exhibit 5F). One of the rheumatologic specialists concluded that the claimant did not meet fibromyalgia criteria (Exhibit 18F). However, another rheumatologic specialist, Dr. Chulski, concluded that the claimant met the fibromyalgia criteria (Exhibit 22F). Dr. Chulski seemed somewhat reliant on an established fibromyalgia diagnosis and he failed to record actual diagnostic findings, which made his conclusion less reliable. His conclusion that the claimant could not perform even sedentary work is rejected, because it is not supported by the weight of the medical evidence and even his own progress reports.
> 
> The diagnosis of fibromyalgia relies on many criteria that cannot be objectively verified, and therefore, the longitudinal record is more persuasive in establishing disability. *Even if the claimant carries a diagnosis of fibromyalgia, her functional limitations are not as severe as alleged*. Her anecdotal activities, the inconsistencies between her complaints and the clinical findings, her overstatement of symptoms, and the observations of the treating sources are more persuasive in determining her actual limitations. For example, the claimant alleged "weeks and weeks and weeks" of headaches and complained of swollen knees, but the examination was entirely negative (Exhibits 18F and 27F). The claimant also continued to

> work part-time, about 20-25 hours per week through 2008. Although her work activity was not performed at the substantial gainful level, it is certainly reflective of her ability to work. *The clinical findings were minimal. X-rays, scans, physical examinations, and EMG studies were either unremarkable or revealed mild findings*. The claimant did not have classic tender points or joint swelling or deformity, which was not consistent with fibromyalgia. Physicians reported that pain was adequately controlled on pain relief medication, such as Percocet. The claimant refused treatment on more than one occasion. She refused physical therapy and failed to show for scheduled psychotherapy sessions on numerous occasions. She acknowledged an ability to perform normal activities of daily living with a few breaks. Her activities, her work activity, and her failure to pursue physical and mental health treatment severely undercut her credibility.

AR 27-28 (emphasis added). Thus, as among the relevant factors required by SSR 96-7p, the ALJ properly considered the medical evidence, discrepancies between that evidence and Blader's subjective complaints, her failure to follow treatment and her daily activities.

Credibility findings made by the ALJ are entitled to special deference because that judge is in the best position to see and hear the witness and to assess their forthrightness. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (citing *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997)); *see also Schenk v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). For this reason, an ALJ's credibility determination will be upheld unless it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2004); *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004) ("An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" (citation omitted)); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be

disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). The court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record. *See Skarbek,* 390 F. 3d at 505; *see also Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when the ALJ's determination lacks any explanation or support that [the court] will declare it to be 'patently wrong.'").

In the end, this is not one of those rare occasions in which the court should disturb the ALJ's credibility finding. The ALJ built an accurate and logical bridge between the evidence and his conclusion that Blader's view of her own limitations was not fully credible. In doing so, the judge properly and expressly took into consideration the medical evidence and Blader's testimony, including accounts of the work she performed after the alleged onset of her disability. Based on this record, the court concludes that the administrative determination was not patently wrong.

## II. Failure to Credit a Treating Physician's Opinion

Blader also contends that the ALJ failed to properly determine her residual functional capacity to perform any level of work by improperly discounting the opinion of a treating physician. Dr. Chulski concluded that she was incapable of performing even sedentary work due to severe fibromyalgia. As one of her treating physicians, Blader argues that Dr. Chulski's opinion should have been given more weight.

Although an ALJ must consider all medical opinions of record, he is not

13

necessarily bound by those opinions. *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the ALJ has no basis on which to refuse to accept the opinion. *Id.* When the record contains well supported contradictory evidence, however, the treating physician's opinion "is just one more piece of evidence for the ALJ to weigh," taking into consideration the various factors listed in the regulation. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: the number of times the treating physician has examined the claimant; whether the physician is a specialist in the allegedly disabling condition; how consistent the physician's opinion is with the evidence as a whole; and other factors. 20 C.F.R. § 404.1527(d)(2). Still, an ALJ must offer "good reasons" for discounting the opinion of a claimant's treating physician. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

As discussed above, the ALJ found that Dr. Chulski failed to record actual diagnostic findings, which undercut the reliability of his conclusion that she was totally disabled as a result of fibromyalgia. AR 23, 27. Instead, the record reflects that Dr. Chulski relied on Blader's subjective reports. AR 349-52. The ALJ also explained her rejection of Dr. Chulski's specific opinion that Blader could not perform sedentary work because it was not supported by "the weight of the medical evidence and even his own progress reports." AR 27. In particular, Dr. Chulski noted on a number of occasions that

14

Blader's fibromyalgia pain was controlled by medication.[7]  AR 411, 445, 467, 478.

Because Dr. Chulski's opinion was based almost exclusively on his assessment of Blader's subjective complaints, rather than specific diagnostic findings, the ALJ did not err by according his opinion little weight.  *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (ALJs may discount medical opinions based solely on the patient's subjective complaints); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).  To the extent that Chulski's opinion conflicted with other physicians, the ALJ was also permitted to reject it, just as she may where, as here, a treating physician's opinion is internally inconsistent or inconsistent with other medical evidence in the record.  *See Dixon v. Massanari*, 270 F.3d 1171, 1176-78 (7th Cir. 2001); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Knight v. Chater*, 55 F.3d 309, 313-314 (7th Cir. 1995).  Because the ALJ gave good reasons for rejecting Dr. Chulski's opinion, this court has no basis to overturn that determination.

### III.  Blader's Mental Impairments

At step two of the analysis, the ALJ concluded that plaintiff did not suffer from any kind of severe mental impairment.  As a result, the ALJ did not include any mental limitations in formulating Blader's residual functional capacity to perform work.

---

[7] The Seventh Circuit has held that an impairment is not even severe — much less disabling — where "the record medical evidence establishe[s] that [a claimant's] symptoms are largely controlled with proper medication and treatment." *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007).

Without specifying how the ALJ was mistaken, Blader contends that the ALJ failed to property assess her mental impairments.  As outlined briefly below, the record does not support this contention either.

The ALJ noted that plaintiff had been seen for depression and anxiety, but that she declined or did not cooperate with treatment for what amounted to physical complaints:

> The claimant was seen at the Parquette Center for Mental Health for alleged depression and anxiety (Exhibit 5F). In June 2009, it was reported that the claimant had failed to show for psychotherapy on multiple occasions. Her therapist reported little progress due to the claimant's infrequent and inconsistent attendance. Her therapist stated that the claimant had a history of "failed appointments in spite of numerous prompts to call for counseling" (Exhibit 5F, page 5). In June 2009, her therapist stated the claimant was last seen in October 2008 and had only appeared for five therapy sessions. In October 2008, her psychotherapist, Dr. Beth Cummings, stated that the claimant had not been seen by her in 10 months (Exhibit 5F, page 14). Dr. Cummings reported the claimant mostly discussed her somatic complaints. She concluded there was a strong somatic component to the claimant's alleged mental impairments. Dr. Cummings advised her to keep her appointments, but the claimant stated she had to travel to Ohio and hurried off. The claimant's allegations were described as grandiose and it was speculated she had possible histrionic personality disorder. In November 2007, the claimant requested a medical excuse from working due to her motor vehicle accident, but her therapist was reluctant to provide her with one. In July 2007, the claimant stated that she was busy writing a children's book, writing songs, and selling art on her web page. In March 2007, the claimant reported that she was a setting up a creative arts center for seniors and youth. In February 2007, her therapist stated that the claimant had multiple somatic complaints.

16

The ALJ also noted that the state psychologist who examined plaintiff (Dr. Varvil-Weld) diagnosed a somatoform disorder. Dr. Varvil-Weld observed further the claimant had a GAF score of 60, which indicates only mild impairment in functioning. Another state psychologist (Dr. Unger) concurred with Dr. Varvil-Weld's opinion that there was no evidence of any severe mental impairment.

In concluding that plaintiff did not suffer from a severe mental impairment, the ALJ expressly considered "the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). Consistent with the evidence of record, the ALJ observed that plaintiff's medically determinable mental impairments caused no more than "mild" limitation in connection with activities of daily living, social functioning, and maintaining concentration, persistence and pace. AR 25 (citing 20 C.F.R. § 404.1520a(d)(1)).[8] The ALJ further found that there were no episodes of decompensation. *Id*. In that respect, the ALJ followed the requisite procedure for evaluating mental limitations described in 20 C.F.R. § 404.1520a, known as the "special technique." *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013).

---

[8] The special technique requires the ALJ to first determine whether a claimant has a medically determinable mental impairment(s). *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013) (citing 20 C.F.R. § 404.1520a(b)(1)). This is done by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings." *Id*. If the claimant has a medically determinable medical impairment, the ALJ must document that finding and rate the degree of function limitation in four broad "functional areas:" activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* (citing § 404.1520a(c)(3); *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008)). These areas are known as the "B criteria." *Id.* (citing *Craft*, 539 F.3d at 674 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq.*)).

As the Commissioner points out in her brief, the ALJ's conclusion is supported by evidence in the record, which shows no sign of a severe mental impairment. Specifically, the record confirms that: (1) Blader did not seek or receive significant mental health treatment; and (2) her mental status examinations were all within normal limits. AR 25, 467, 518, 521. Blader does not show otherwise. Accordingly, she fails to show that the ALJ's conclusion was incorrect.

## IV. Failure to Consider Evidence of Other Severe Impairments

Finally, Blader contends that the ALJ failed to analyze "significant medical evidence of additional severe impairments" supporting her claim, including gastro-esophageal reflux disease, irritable bowel syndrome, osteoarthritis, osteoporosis, a baker's cyst and hiatal hernia. (Dkt. # 10, at ¶ 4).

The record reflects that plaintiff was treated for gastro-esophageal reflux disease and irritable bowel syndrome on June 19, 2009, conditions exacerbated by "dietary issues" and lifestyle choices (*i.e.*, smoking a pack of cigarettes daily). AR 272. Blader points to no other evidence showing she received treatment for gastro-esophageal reflux disease or irritable bowel syndrome. Moreover, Blader points to nothing in the record showing that she suffered from osteoarthritis, osteoporosis, a baker's cyst or a hiatal hernia, nor does she explain how these conditions, considered singly or in combination, caused more than minimal limitations in her ability to perform basis work. Because she has failed to develop this argument, these other, claimed impairments present no basis

18

for relief and the court declines to consider them further. *See Wolms v. Barnhart*, 71 F. App'x 579, 580, 2003 WL 21699009, *1 (7th Cir. 2003) (a disability claimant's conclusory assertions with no citation to the record are insufficient to state a reviewable ground for relief).

ORDER

IT IS ORDERED THAT the decision of defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, denying plaintiff Lauralie H. Blader's application for disability insurance benefits is AFFIRMED and this case is DISMISSED with prejudice.

Entered this 5th day of September, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge